IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| GEORGE ANTHONY ROSS, EE-1993,  Petitioner, | ) ) ) | |
| v. | ) ) | 2:09-cv-1322 |
| DISTRICT ATTORNEY OF ALLEGHENY COUNTY, et al.,  Respondents. | ) ) ) ) | |

MEMORANDUM and ORDER

Mitchell, M.J.:

George Anthony Ross has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis. For the reasons set forth below, the petition will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

Ross is presently incarcerate at State Correctional Institution Fayette servings a twenty-three and a half to forty-seven year sentence imposed following his conviction, by a jury, of third degree murder and firearms violations at Nos. CC 19970831 and 199703687 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on September 12, 2001.[1]

---

[1] See: Petition at ¶¶ 1-7 and the answer of the Commonwealth. The answer of the Commonwealth notes that the petitioner's trial originally commenced on June 4, 1997 and the jury reported itself hopelessly deadlocked on June 6, 1997 and a mistrial was declared. On October 28, 1997, a retrial commenced and the petitioner was convicted of third degree murder, aggravated assault and firearms violations on October 30, 1997. Sentence was imposed on December 18, 1997 and on appeal, as a result of trial court errors, the conviction was reversed on

1

An appeal was taken to the Superior Court in which the questions presented for review were:

> 1. Whether the trial court erred in ruling that Randy Erwin was unavailable and in admitting Randy Erwin's prior testimony?
>
> 2. Whether the trial court erred in refusing to permit Thomas Thorton to testify to impeach the testimony of Randy Erwin?
>
> 3. Whether trial counsel was ineffective for failing to introduce evidence of Randy Erwin's prior conviction for false reports to police?[2]

On October 23, 2003, the Superior Court affirmed the judgment of conviction.[3] A petition for allowance of appeal was filed in which these same questions were presented for review.[4] On March 10, 2004, leave to appeal was denied.[5]

On March 9, 2005, Ross filed a post-conviction petition.[6] Following an amendment of the petition and an evidentiary hearing, post-conviction relief was denied on August 7, 2007.[7] An appeal was taken to the Superior Court in which the issues presented were:

> 1. Whether the PCRA Court erred in denying relief when the trial court erred in instructing a juror before the verdict was recorded?

---

May 31, 2000. The petitioner's third trial commenced on May 1, 2001 and on May 3, 2001, the petitioner was convicted of third degree murder and firearms violations. The sentence being challenged appears at pp.177-178 of the answer.(All references to the answer of the Commonwealth will refer to the Bates numbered pages therein unless otherwise stated).

[2] See: Answer at p.235.

[3] See: Answer at pp.336-349.

[4] See: Answer at p.361.

[5] See: Answer at p.430.

[6] See: Answer at p. 441-474.

[7] See: Answer at p. 541.

    a. Whether the PCRA Court erred in denying relief when the trial court erred in communicating/instructing a single juror as opposed to the entire jury?

    b. Whether the PCRA Court erred in denying relief when the trial court erred in communicating/instructing the juror as the nature of the communication dealt with the juror's analysis and determination of Appellant's guilt during the deliberation process?

  2. Whether the PCRA Court erred in denying relief when Appellant was denied his constitutional right to be present during a critical state of the criminal trial?

  3. Whether the PCRA Court erred in denying relief when trial counsel was ineffective for failing to object to Appellant's absence during the supplemental questioning and/or instruction in the judge's chambers?

  4. Whether the PCRA Court erred in denying relief when trial counsel was ineffective for failing to object to trial court's questioning and/or instructing a juror during deliberation?

  5. Whether the PCRA Court erred in denying relief when trial counsel was ineffective for failing to present *crimen falsi* of the Commonwealth's chief witness, Randy Erwin's conviction of False Reports to Law Enforcement conviction during the trial?[8]

On January 6, 2009, the denial of post-conviction relief was affirmed.[9]

  A petitioner for allowance of appeal to the Pennsylvania Supreme Court was filed in which the sole question presented was

  1. The Superior Court erred by failing to address petitioner's trial court err on the basis of structural defect arguments by incorrectly addressing under ineffective assistance of counsel analysis.[10]

---

[8] See: Answer at p. 560.

[9] See: Answer at pp.648-660.

[10] See: Answer at p. 672.

On August 18, 2009, leave to appeal was denied.[11]

In the instant petition which was executed on September 24, 2009, Ross contends he is entitled to relief on the following grounds:

1. Trial Court committed a structural defect by having an ex parte conversation with a juror and subsequently giving a private instruction before recording the verdict.

2. Petitioner was denied his constitutional right to be present during a critical stage of the criminal trial... [and] was never informed that there was any discussion or meeting in the judge's chambers.

3. Trial court erred in failing to declare a mistrial after it became apparent that a juror was impaired [and the matter being addressed in chambers ex parte].

4. Trial counsel was ineffective for failing to object to petitioner's absence during the supplemental questioning and/or instructions in the judge's chamber.

5. Trial counsel was ineffective for failing to object to trial court [and tipstaff]'s questioning and/or instructing single juror during deliberations.

6. Trial counsel was ineffective for failing to present Mr. Erwin's false reports conviction.

7. Trial court erred in refusing to permit Thomas Thornton to testify to refute and impeach the perpetuated testimony of R. Erwin.

8. Trial court erred by declaring Randy Lee Erwin a key witness for the Commonwealth, unavailable when he refused to testify in May 2001.

9. The prosecutor committed a Brady violation by withholding a critical crimen false report of Randy Erwin.[12]

It is provided in 28 U.S.C. §2254(b) that:

---

[11] See: Answer at p.722.

[12] See: Petition at pp.8-12.

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a

question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, the Commonwealth concedes that issues 1, 2, 4, 5, 6, 7 and 8 are properly before this Court in that they were first presented to the courts of the Commonwealth for their consideration in the first instance.[13]

However, the Commonwealth also notes that the petitioner's third and ninth issues were not presented to the courts of the Commonwealth for their consideration and for this reason are not properly before this Court. In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas

---

[13] See: Answer at p.20.

review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

In the instant case it would appear that the petitioner has failed to raise his third and ninth issues in the courts of the Commonwealth and for this reason has procedurally defaulted on the available state court remedies and cannot now raise those issues in this Court. The petitioner now concedes this matter (Docket No. 13).

The background to this prosecution is set forth in the Superior Court's repetition of the trial judge's summary:

> Several days prior to Cheo Stevenson's death on December 31, 1996, [Appellant] was attempting to sell crack cocaine on Federal Street in the Northside Section of the City of Pittsburgh. [Appellant] was approached by two individuals and told that Federal Street was their territory and that he was not permitted to sell crack cocaine in that area. On December 31, 1996, Jonathan Smith, (hereinafter referred to as "Smith"), Jacques Early (hereinafter referred to as "Early"), Cheo Stevenson, (hereinafter referred to as "Stevenson"), were in a jitney traveling on Federal Street, when it turned onto Jacksonia Street and came to a stop at the corner of Jacksonia Street and Monterey Street. Smith noticed [Appellant], whom he knew from the neighborhood for a number of years, walk from the crowd and proceed to walk toward the rear of the car. [Appellant] walked behind the vehicle and was standing near the rear door on the driver's side of the vehicle when Smith heard a fireworks-type sound and saw sparks coming from [Appellant's] hand. The glass in the rear driver's side window of the vehicle then broke and Stevenson slumped forward and began breathing irregularly. The jitney driver, William Peete, immediately drove the car around the corner to avoid further gunfire and then proceeded to Allegheny General Hospital since Stevenson was injured. Ultimately, Stevenson died at the hospital as a result of a bullet wound in his head.[14]

The petitioner's first, second, fourth and fifth issues concern his absence from a meeting

---

[14] See: Answer at pp.336-337.

7

between the trial court and a juror.[15] In his March 14, 2008 opinion the PCRA court wrote:

> All but one of Ross' claims [for post-conviction relief] deal with an in camera discussion that took place with one of the jurors on Ross' case where he was not present but his trial counsel and the assistant district attorney were present. This discussion is set forth in pages 254 through 270 of the Trial Transcript. From a review of this discussion, it is apparent that Ross mischaracterized what took place since there was no communication with the juror as to her thought process or were additional instructions being given. What took place during that discussion with juror number eight, was a revelation of the fact that she had reservations as to whether or not she could announce the verdict that she had reached in open Court since she was the sole African-American on the jury panel and that she feared that when she returned to her community that she might be subjected to certain pressures or reprisals as a result of her returning a verdict of guilty against another African-American, despite the fact that the victim was also an African-American. Due to her inability to articulate her feelings initially, this Court asked her a direct question [regarding whether she had reached a verdict. Whereupon she responded affirmatively but indicated that she was unhappy with it].
>
> This juror then went on to disclose what was troubling her by indicating that she would have to return to her community knowing that she had convicted this African-American.
>
> In the extended discussion that was had with this juror, it was also revealed that the entire jury had reached a verdict with respect to the charges filed against Ross, before any discussion with her took place.[16]

We have examined the relevant portions of the transcript and likewise conclude that the jury had reached a verdict when one particular juror, the only African-American on the jury, expressed her fear that she might experience repercussions as a result of having convicted another African-American. What is clear is that prior to the in camera meeting, the juror as well

---

[15] Although not considered here, the third issue which the petitioner raises also originates from these events.

[16] See: Answer at pp. 550-551.

as her fellow jurors had reached a unanimous verdict but she was having second thoughts about rendering a verdict. It was these fears that the trial judge sought to dispel and in no way was the deliberation of the juror or the jury itself discussed. (TT2 pp.254-270)[17] The jury verdict was then received in open court and this particular juror, when polled, expressed her concurrence in the guilty verdict.[18]

In Shields v. United States, 273 U.S. 583, 589 (1927), the Court held that a defendant is entitled to be present from the time a jury is empaneled until it is discharged. However, in Snyder v. Massachusetts, 291 U.S. 97, 105-106 (1934) [overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964)] the Court made clear that this right to be present exists when a defendant's presence "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." But, the presence of the defendant is not required where "presence would be useless, or the benefit, but a shadow." Id. at p. 106-107. More recently, the Court in Kentucky v. Stincer, 482 U.S. 730, 745 (1987) reiterated that a defendant's due process right to be present at his criminal prosecution arises "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defendant against the charge...[or when] a fair and just hearing would be thwarted by his absence."

As applied to the facts of the instant case, the jury had already announced that it had reached a verdict; the particular juror indicated her concurrence in the verdict, but only expressed concern regarding her taking action against another African-American. Clearly, this event had no

---

[17] References to the record of the retrial of the petitioner which commenced on May 1, 2001 are marked "TT2 p___.

[18] Id. at p.272.

9

relationship to the determination of Ross' guilt or innocence. As such, while perhaps not desirable, the action of the trial court did not violate any clearly established precedent as determined by the Supreme Court, and for this reason, all claims related to this in camera proceeding fail to provide a basis for relief here.

The next issue which the petitioner raises is that counsel was ineffective for failing to present evidence of a prior conviction of prosecution witness Erwin. Specifically, when called upon to testify, Erwin, out of the presence of the jury, refused to do so on the grounds that as an incarcerated inmate he would be labeled a "snitch" if he testified and feared the possible repercussions of doing so (TT2 pp.109-119).Thereupon, the court declared him to be unavailable (TT2 p.119) and the prosecution presented his prior testimony rendered at the petitioner's second trial which commenced on October 27, 1997, in which Erwin related the fact that while he and the petitioner were incarcerated at the Allegheny County Jail, he informed the petitioner that he was in jail on retail theft charges and the petitioner related his involvement in the killing of Stevenson (TT2 pp.122-123), and that he had not been promised anything in exchange for his testimony (TT2 p.125).

Following the offering of this testimony, at the direction of the court, the prosecution presented a complete outline of Erwin's prior record and the court informed the jury that his record was a factor to consider in evaluating the credibility of his testimony (TT2 pp.140-143).

The petitioner now contends that counsel was inadequate for failing to present evidence of Erwin's prior conviction of *crimen falsi* thereby contesting the validity of his testimony.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of

counsel.  First, the petitioner must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000).  Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987).  As a result, if a petitioner fails on either prong, he loses.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th  2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted);  Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

In the instant case, the criminal record of Erwin was made known to the jury, and in its instructions, the trial court informed the jury that it was proper to considered the witness' prior record in determining his credibility (TT2 pp.248-249). Thus, at the direction of the trial court, Erwin's criminal record was made known to the jury, and the jury was properly instructed on

evaluating the credibility of such a witness. Any further presentation by defense counsel would merely have been duplicative of the evidence of record, and counsel cannot be faulted for failing to engage in a meaningless act. Additionally, in light of the evidence of the petitioner's guilt, it cannot be demonstrated that any additional evidence regarding Erwin's criminal record would have permitted any difference result.

The next issue which the petitioner raises is that the trial court erred in refusing to permit Thomas Thornton to testify to impeach the testimony of Erwin. Specifically, the defense sought to call Thornton as a witness to testify that while he was incarcerated with Erwin, after the second trial, Erwin related that a defendant could secure certain benefits by testifying as a Commonwealth witness thereby possibly challenging Erwin's testimony that nothing had been promised to him in exchange for his testimony (TT2 pp.173, 176,181-182). In this regard, the Commonwealth observed that a search of the prison records failed to disclose that Erwin and Thornton were ever housed in the same prison at the same time (TT2 pp.172, 176) and that any testimony which Thornton would offer would be hearsay (TT2 p.175). Thereupon, the court sustained the Commonwealth's objection to Thornton being called as a witness (TT2 p.187).

In arguing this exclusion to the Superior Court, Ross relied on Chambers v. Mississippi, 410 U.S. 284 (1973) alleging that Thornton's testimony should not have been excluded as hearsay. In reviewing this claim, the Superior Court wrote:

> [In Chambers] the U.S. Supreme Court determined that the exclusion of the testimony by the three witnesses on the basis of hearsay was error. The Court concluded that these particular hearsay statements were given under circumstances indicating reliability. Each was spontaneously made shortly after the murder, each was corroborated by a significant amount of other evidence, and each was self-incriminatory...

> We cannot agree with Appellant's argument that his situation is akin to that in **Chambers**. The alleged conversation between Mr. Erwin and Mr. Thornton was made several years after the victim was shot in this case. Although the proffered statements indicated a less than honorable motive on the part of Mr. Erwin, he did not implicate himself in any particular crime, and thus his words were quite unlike the confessions given in **Chambers**. Lastly, and perhaps most importantly, we have already agreed with the trial court that Mr. Erwin was not available to provide testimony at Appellant's third trial. As such, the indicia of reliability which the U.S. Supreme Court found compelling in **Chambers** are critically absent. We thus are unpersuaded that the trial court erred or abused its discretion in excluding Mr. Thornton's testimony as substantive evidence based on the hearsay rule.[19]

We note that a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence," Taylor v. Illinois, 484 U.S. 400, 410 (1988), and provided such an exclusion is not arbitrary or disproportionate to its purpose, state evidentiary determinations are not generally subject to habeas review. Rock v. Arkansas, 483 U.S. 44 (1987). In the present case, the proposed testimony was clearly inadmissible hearsay and therefore properly excluded. Thus, this claim does not provide a basis for relief here.

Finally, the petitioner argues that the trial court erred by declaring Erwin unavailable when he refused to testify, and permitted the introduction of his prior testimony at the petitioner's third trial. Since the nature of that testimony has been previously discussed, it will not be repeated here, but suffice it to say that at the second trial the petitioner was represented by counsel who had a full and fair opportunity to cross-examine Erwin. While physically present at the third trial, Erwin unequivocally refused to testify citing his fear of repercussions in prison if he did so (TT2 pp.110-119) whereupon the trial court declared him to be 'unavailable (TT2

---

[19] See: Answer at pp. 346-347.

p.119). Citing to Pennsylvania law, the Superior court concluded:

> We must agree with the trial court's assessment that this witness was plainly unavailable. **See Commonwealth v. Nelson**, 652 A.2d 396, 398 (Pa.Super. 1995)(explaining that determination of whether witness is unavailable depends on "whether the prosecution has 'made a good faith effort to produce the live testimony of the witness and, through no fault of its own, is prevented from doing so.'")(citations omitted**),** Pa.R.E. 804. It is well settled that the "[prior sworn testimony of a witness is admissible in a later proceeding where the witness is unavailable and the defense has been provided a opportunity for cross examination." **Commonwealth v. Wayne**, 553 Pa. 614, 634, 720 A.2d. 456, 465-66 (1988), cert. denied, 528 U.S. 834 (1999).[20]

The Superior Court then continued by noting that on appeal, the petitioner claimed a lack of ability to adequately cross-examine Erwin at the second trial based on the after discovered evidence proposed by Thornton. However, as the Superior Court observed, the Thornton "evidence" did not become available until two years after the second trial and therefore could not have introduced at that trial.[21] Additionally, as observed above, the testimony of Thornton was clearly inadmissible.

Since the determination to exclude the Thornton testimony was based upon state court rules of evidence it is not subject to review here except under the narrow circumstances discussed above. Estelle v. McGuire**,** 502 U.S. 62 (1991**).** But, even if not the case, the United States Supreme Court has recognized that prior testimony, given under oath and subject to cross-examination is admissible when that witness is unavailable. United States v. Salerno, 505 U.S. 317 (1992). See also: F.R.Evid. 804(b)(1).

As the Court in Fischetti v. Johnson, 384 F.3d 140, 143 (3d Cir. 2004) observed, "the

---

[20] See: Answer at p.341.

[21] See; Answer at p. 342-343.

state court's admission of prior testimony without a preliminary determination that the witnesses were unavailable for trial infringed on Fischetti's Sixth Amendment right to confront witnesses." Such clearly is not the case here since the trial court conducted a thorough in camera examination of Erwin who unequivocally represented that he would not testify against the petitioner for fear of his own safety in prison. As such, he was unavailable and his prior testimony was properly introduced under both state and federal standards, and this claim does not provide a basis for relief here.

      Because it is apparent that Ross' state court conviction was not contrary to any clearly established federal law  nor demonstrated an unreasonable application of law as determined by the United States Supreme Court, his petition here does not provide a basis for relief. Accordingly, his petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

      An appropriate Order will be entered.

ORDER

AND NOW, this 2nd day of December, 2009, for the reasons set forth in the foregoing Memorandum, the petition of George Anthony Ross for a writ of habeas corpus is dismissed and because reasonable jurists could not conclude that a basis for relief exists, a certificate of appealability is denied.

s/ Robert C. Mitchell
United States Magistrate Judge
